# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| JOHNNY JOHNSON, | |
| Petitioner, | |
| VS. | NO. 5:07-CV-454 (MTT) |
| TONY HENDERSON, | |
| Respondent. | Proceedings Under 28 U.S.C. §2254<br>Before the U.S. Magistrate Judge |

## RECOMMENDATION TO DENY RELIEF

Before the court is petitioner Johnny Johnson's 28 U.S.C. §2254 petition for writ of habeas corpus. Doc. 1. In his Petition, Johnson raises six grounds for relief, including ineffective assistance of appellate counsel, ineffective assistance of trial counsel, and four alleged violations of due process related to evidentiary rulings by the trial court. For the reasons set forth below, it is hereby recommended that the Petition be **DENIED**.

## PROCEDURAL HISTORY

On October 9, 2001, petitioner Johnny Johnson was indicted by a Butts County, Georgia grand jury for the offenses of aggravated child molestation, aggravated sexual battery, aggravated sodomy, and four counts of child molestation. Following a jury trial, Johnson was found guilty on one count of aggravated child molestation and four counts of child molestation. He was given a "split" sentence of twenty years on each count for a total of twelve years to serve with the remainder on probation.

Following an unsuccessful motion for a new trial, Johnson retained a new attorney and filed a direct appeal. In his direct appeal, Johnson raised the following several enumerations of error, including claims 1) that the trial court erred by allowing evidence of similar transactions to be

admitted; 2) that the trial court erred by excluding evidence that he offered to take a polygraph examination; 3) that the trial judge erred by improperly expressing his opinions about the evidence; 4) that the trial court gave in inadequate jury charge regarding similar transaction evidence; and 4) that trial counsel provided ineffective assistance. On March 14, 2005, the Court of Appeals affirmed the convictions and sentences. Johnson v. State, 272 Ga. App. 385, 612 S.E.2d 518 (2005). Johnson then filed a petition for certiorari in the Georgia Supreme Court, which denied his petition on June 30, 2005.

On March 10, 2006, Johnson filed a state habeas corpus petition in the Superior Court of Baldwin County, Georgia wherein he alleged ineffective assistance of appellate counsel. In support, he claimed that his appellate counsel failed to investigate the record and failed to raise on direct appeal six specific instances in which trial counsel had provided ineffective assistance. Johnson contended that his appellate counsel should have argued that trial counsel was ineffective when he: 1) failed to move for a mistrial; 2) failed to object to the State's failure to show that he was advised of his Miranda rights, understood those rights, and voluntarily waived those rights prior to questioning by the police; 3) failed to request a Jackson-Denno hearing; 4) failed to file a pretrial motion to compel the State to produce the tape recording(s) of his statement; 5) failed to object or move for a mistrial when the trial judge questioned the arresting officer during the presentation of the defense case; and 6) failed to request a jury charge regarding his interview by and statement to the police. After a June 14, 2006 evidentiary hearing, the state habeas corpus court denied relief in an order filed April 30, 2007. On June 25, 2007, the Georgia Supreme Court denied Johnson's subsequently filed application for a certificate of probable cause to appeal.

On November 20, 2007, Johnson executed the instant federal petition, stating six grounds for relief:

In Ground One, Johnson alleges ineffective assistance of appellate counsel and states seven specific allegations of ineffectiveness.

In Ground Two, Johnson separately alleges ineffective assistance of trial counsel and states nine specific allegations of ineffectiveness.

In Ground Three, Johnson claims that the trial court violated his right to due process and equal protection by refusing to allow evidence that he offered to submit to a polygraph exam.

In Ground Four, Johnson contends that the trial judge repeatedly questioned witnesses and illegally interjected himself into the presentation of the evidence in violation of O.C.G.A. § 17-8-57 and the requirements of due process.

In Ground Five, Johnson alleges that his "conviction was obtained by similar transaction evidence without the trial court holding a pre-trial Rule 31.3 hearing," thus violating his right to due process.

Finally, in Ground Six, Johnson argues that his conviction was obtained "by the use of an improper final jury charge on similar transaction evidence."

## STATEMENT OF FACTS

In accordance with 28 U.S.C. § 2254(e)(1), and for purposes of considering the instant petition, the facts as found by the Georgia Court of Appeals on direct appeal of Johnson's criminal case are adopted by this court. The Court of Appeals summarized those facts as follows:

> Viewed favorably to the jury's verdict, the evidence shows that in August 2001, the victim, who was then 14 years old, visited Johnson, her former stepfather, to shop for school clothes. She stayed at his house. Around 8:00 a.m., Johnson entered her bedroom wearing black shorts. He got in bed with her, put his hands under her shorts, and started moving his fingers around her vagina. He then asked her what she wanted for breakfast and left her room. He returned shortly thereafter and told her to lie on her back. She complied, and he pulled her shorts to the side, put his hand

on her vagina, and started rubbing her "down there." At this point he was "over her" but not lying on top of her. She felt his penis "at" her vagina. He also touched her breast area, and put his mouth on her vagina. He told her that he wanted to teach her about sex so that she would not be curious about it when she grew up, but that some people might think what he was teaching her was wrong. He also told her the incident was between the two of them, and it was up to God, not other people, to judge whether he was wrong. The next day, the victim reported Johnson's conduct to her mother.

On August 20, 2001, Major Mike Overbey of the Butts County Sheriff's Office interviewed the victim's mother, the victim, and Johnson regarding the victim's allegations of child abuse. Johnson admit[ed] touching the victim's breasts, but denied touching her anywhere else. He also said "it was for playing and it was not for sexual reasons."

At trial, the court allowed evidence of two similar transactions. First, seventeen-year-old D. B. testified that on four different occasions beginning when she was approximately seven to ten years old, Johnson, who was then her aunt's husband, touched her vagina and breasts. When she was approximately 13 or 14 years old, he told her that he was touching her so she would know what to expect and not have boys take advantage of her. Second, fifteen-year-old K. H., who is D. B.'s first cousin, testified that when K. H. was approximately nine or ten years old, Johnson put his hand under her panties and moved his hand around her vagina.

Johnson, 272 Ga. App. at 385-86.

## NEED FOR AN EVIDENTIARY HEARING

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. §2244, if an applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on: (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2). This case does not involve any new rules of constitutional law, and the record created

during the state proceedings provides a thorough factual predicate for review of the claims. As such, no evidentiary hearing is warranted.

## LEGAL STANDARDS

In accordance with the provisions of 28 U.S.C. § 2254(d), this court is prohibited from granting relief with respect to any claim adjudicated on the merits in state court proceedings unless that adjudication either: (1) resulted in a decision contrary to clearly established federal law; (2) involved an unreasonable application of clearly established federal law; or (3) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005).

A state court decision is "contrary to" clearly established federal law if either "(1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir.2001). An "unreasonable application" of clearly established federal law may occur if the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case." Id. "An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Id. Moreover, when a "state court's application of federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

## DISCUSSION

### Ground One

In Ground One, Johnson contends that he received ineffective assistance of appellate counsel. Johnson raised this claim in his state habeas petition. In reviewing this claim, the state habeas corpus court identified and then correctly applied the appropriate legal standard, as set forth

in Strickland v. Washington, 466 U.S. 668 (1984). As the state court acknowledged, Strickland requires a petitioner to show first that his counsel's performance was deficient, then that counsel's deficient performance prejudiced the defense. After a hearing that included a thorough examination of Johnson's appellate counsel, the state habeas court concluded that Johnson had failed to meet his burden. The state habeas corpus court's decision was neither contrary to nor an unreasonable application of clearly established federal law. Consequently, the petitioner's claims of ineffective appellate counsel claims fail.

In Ground One, Johnson states seven specific instances of allegedly ineffective assistance of his appellate counsel. Johnson contends that his appellate counsel: 1) failed to investigate the case; 2) failed to argue that trial counsel ineffectively failed to file a motion to compel the tape recording of his statement; 3) failed to raise a claim that missing tape recordings and an uncertified transcript of his police interrogation resulted in a due process violation; 4) failed to argue that trial counsel failed to request a Jackson-Denno hearing; 5) failed to argue that trial counsel had failed to object or move for a mistrial based on the State's failure to re-open the State's evidence when, during the trial, the trial judge took over cross examination of the arresting officer in order to prove the Miranda rights claims; 6) failed to raise on appeal all of the issues raised in the amended motion for new trial; and 7) failed "to perfect the record at the new trial hearing when he did not prove the prejudice prong for all of his ineffective assistance of pre-trial and trial counsel claims."

The sixth and seventh parts of Ground One were not raised in Johnson's direct appeal or in his state habeas petition and therefore state remedies have not been exhausted as to those claims. An unexhausted claim is not subject to review on federal habeas, and must be dismissed with prejudice if it is clear that the claim would be barred from consideration in state court due to a state law procedural default. See Ogle v. Johnson, 488 F.3d 1364, 1370 (11th Cir. 2007). Under Georgia law, a defendant is barred "from raising in a second, or successive, collateral attack proceeding an error that he should have presented in his first, or earlier, collateral attack proceeding." Presnell v.

Kemp, 835 F.2d 1567, 1573 (11th Cir. 1988) (citing O.C.G.A. § 9-14-51). Because the claims in parts six and seven of Ground One could have been raised in Johnson's original petition, they are procedurally barred from subsequent consideration and must be dismissed with prejudice.

As to the remaining claims of ineffective assistance of appellate counsel, the record shows that the state habeas court made reasonable determinations of fact based on evidence presented at the hearing on Johnson's petition and reasonably applied clearly established federal law to determine that Johnson's counsel had not been ineffective. After examination of Johnson's appellate counsel at the hearing, the state court made the following findings of fact:

> Petitioner was represented for the purpose of his motion for new trial and on appeal by Thomas West, who was retained by Petitioner's mother. Mr. West was admitted to the Georgia Bar in 1973, and has been in private practice doing criminal defense work since 1980. At the time of the hearing on the instant petition, Mr. West had handled approximately 75 or 80 appellate cases.
>
> In deciding what issues to raise in the amended motion for new trial and on appeal, Mr. West obtained the trial transcript and talked with Petitioner's trial counsel. Mr. West conferred with Petitioner mostly through mail, perhaps through telephone calls, and through his mother, who acted as an intermediary. He examined the trial record and "ma[d]e notes of things that jump[ed] out at [him] as improper or irregular things or things that cause[d] [him] to have some concern." Mr. West also took into account the issues Petitioner was concerned with, and incorporated into the amended motion for new trial and the appeal what he thought were "good issues."
>
> Mr. West pursued on appeal most of the issues he had raised in the amended motion for new trial. On appeal, Mr. West raised the following enumerations of error: the trial court erred in admitting similar transactions evidence; the trial court erred in barring evidence of [the investigator's] offer of a polygraph test; the trial court erred by questioning witnesses and interjecting itself into the case; the trial court erred in its charge on similar transactions; and trial counsel rendered ineffective assistance of counsel, in that he failed to adequately investigate the case, failed to interview prosecution witnesses, failed to object to the court's comments and interjections, failed to object to leading and improper questions, elicited damaging testimony, failed to reserve objections the court's jury charges, in particular the incomplete charge on similar transactions, failed to challenge the defective indictment, failed to move for a directed verdict of acquittal when the State failed to prove that the crime occurred as alleged, failed to effectively cross-examine the victim, failed to obtain, through discovery, the documentation of the alleged dates of the crimes so that the victim could be impeached, and failed to present evidence that Petitioner was in custody at the time the alleged crime occurred.

Order of Sup. Ct. of Baldwin County 3-4 (Doc. 15 Ex. 4)(transcript citations omitted). The findings of the state court were reasonable based upon the record of the appeal itself and the testimony of appellate counsel. There is no need to reconsider them in the present proceeding. The state court also reasonably applied the proper federal standard, based on <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), to conclude that appellate counsel had provided effective assistance. Because the state habeas court's decision was consistent with clearly established federal law and was based on a reasonable determination of the facts, Johnson is not entitled to relief under 28 U.S.C. § 2254.

## Ground Two

In Ground Two, the petitioner alleges ineffective assistance of trial counsel. Specifically, he claims that trial counsel was ineffective in that he: 1) failed to investigate the case; 2) failed to interview prosecution witnesses; 3) failed to object to the court's comments and interjections; 4) failed to object to leading and improper questions and elicited damaging testimony; 5) failed to reserve objections to the jury charges, specifically the incomplete charge on similar transactions; 6) failed to challenge the defective indictment; 7) failed to move for a directed verdict of acquittal when the State allegedly failed to prove that the crimes occurred as alleged; 8) failed to cross-examine the victim effectively by failing to discover impeachment evidence regarding the alleged dates of the crimes and failing to present evidence that Johnson was in custody at the time the alleged crime occurred; and 9) failed to perform as counsel in all of the above-listed claims.

The first eight specific claims were raised by the petitioner on direct appeal.[1] For the factual basis of its review, the state appellate court considered the testimony of Johnson's trial attorney on motion for new trial, in addition to the record of the trial. The transcript of the trial and the hearing on motion for new trial are also in the record of this case, and the factual findings of the state

---

[1] The ninth claim, to the extent that it is anything more than a restatement of the first eight, is procedurally defaulted.

appellate court are reasonable and consistent with the facts shown in those transcripts. Johnson's trial counsel was thoroughly and aggressively cross-examined by his appellate counsel at the new trial hearing. Review of trial counsel's testimony and of his performance at trial confirms the appellate court's conclusion that trial counsel pursued a reasonable trial strategy focused on challenging or undermining the credibility of the victim and the other witnesses. Trial counsel was also forced to make tactical decisions regarding the use of an ambiguous statement by Johnson that was partially exculpatory and partially inculpatory.

The appellate court applied the correct legal standard for analyzing claims of ineffective assistance of counsel, noting that Johnson was required to show "that counsel's actions fell below an objective standard of reasonableness and that, but for the alleged ineffective act, there is a reasonable probability that the result of the proceeding would have been different." Although the court cited state rather than federal law as authority for this standard, it is essentially a restatement of the standard prescribed in Strickland. Having completed this analysis, the state appellate court concluded that Johnson had failed to show that he was prejudiced by the tactical decisions of his counsel. This conclusion was neither contrary to nor an unreasonable application of clearly established federal law. Moreover, the record before this Court shows that trial counsel's actions were well within the objective standard of competence demanded of attorneys in criminal cases.

### Ground Three

In Ground Three, Johnson alleges that he was denied due process and equal protection through the trial court's refusal to allow evidence that he was offered a polygraph by the arresting officer. According to Johnson, this evidence, along with the fact that he accepted the offer, should have been allowed to bolster the credibility of his claim of innocence. This claim was raised by the petitioner on direct appeal. On review, the state appellate court noted that the petitioner "only sought admission of his agreement to take a polygraph test, rather than any results." Johnson, 272

Ga. App. at 386. The state appellate court then observed that, "in Georgia, the law of evidence in criminal trials is that the *results* of polygraph examinations are probative and admissible upon express stipulation, but that all other evidence concerning polygraphs is nonprobative, irrelevant and inadmissible." Id. at 385. Accordingly, the state appellate court found no error in the trial court's refusal to admit evidence of the petitioner's agreement to take a polygraph test. Id.

Johnson has not shown that the trial court's decision to exclude evidence of his willingness to take a polygraph was a violation of a federal right. On petition for writ of habeas corpus, a federal court generally does not review the evidentiary rulings of a state court pursuant to state rules of evidence. See Thigpen v. Thigpen, 926 F.2d 1003, 1011 (11th Cir. 1991). "The States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution." Id. at 1012 (quoting Burgett v. Texas, 389 U.S. 109, 113-14 (1967)). To obtain a writ of habeas corpus from a federal court, then, a state prisoner must show that his conviction was obtained in violation of a right established under the Constitution or laws of the United States. For example, a petitioner may show that a decision to admit or deny certain evidence "made the petitioner's trial so fundamentally unfair that the conviction was obtained in violation of the due process clause." Id.

Johnson has made no such showing in this case. The decision of the trial court and holding of the appellate court was not inconsistent with any clearly established federal law. Indeed, federal courts have held similarly that an "offer of a willingness to submit to a polygraph 'is so unreliable and self-serving as to be devoid of probative value.'" United States v. Dinga, 609 F.3d 904, 908 (7th Cir. 2010)(quoting United States v. Burstein, 560 F.2d 779, 785 (7th Cir. 1977)). Under federal law, questions of the probative value or prejudicial effect of such evidence are generally left to the sound discretion of the trial court.

## Ground Four

In Ground Four, Johnson alleges that the trial judge repeatedly questioned witnesses and illegally interjected himself into the presentation of the evidence in violation of O.C.G.A. § 17-8-57, which provides that a judge may not "express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." This argument was raised in Johnson's direct appeal. Johnson specifically cites six instances when the trial judge spoke to witnesses, recorded at pages 24, 52, 69-73, 133, 170, and 274-76 of the trial transcript.[2] In none of these instances did the trial court express any opinion about the case or display any bias. The questions asked by the trial court were generally asked to clarify responses that witnesses had provided on examination by the lawyers and were neutral in substance and tone. The appellate court found that 'none of the comments "seriously affected the fairness, integrity, and public reputation of the proceedings."' Johnson v. State, 272 Ga. App. 385, 387 n. 4 (2005)(quoting Paul v. State, 272 Ga. 845, 849 (2000) . This finding was based on a reasonable determination of the facts and was not contrary to any clearly established federal law.

## Ground Five

In Ground Five, Johnson alleges that his conviction was obtained by similar transaction evidence without the trial court holding a pre-trial hearing pursuant to Rule 31.3 of Georgia's Uniform Superior Court Rules. Rule 31.3 requires the prosecution to provide notice of intent to present similar transaction evidence, and requires the trial court to conduct a hearing to determine whether such evidence is admissible. In the record, it is not clear whether a Rule 31.3 hearing was held or not. There is no transcript of such a hearing, but there are references to a Rule 31.3 hearing

---

[2]The trial transcript is attached as an exhibit to the Response, beginning at Document15-6 and continuing through Document 15-9.

in the trial transcript, and Johnson's trial counsel testified at the hearing on motion for new trial that he recalled such a hearing being conducted. The record does show that the state provided notice of its intent to present such evidence and that the court entered an order admitting such evidence on February 7, 2002, more than six months before the trial. The trial transcript indicates that the evidence was relevant to the charges and probative of Johnson's intent. As such, Johnson has not shown that the admission of the evidence was so fundamentally unfair as to deny him of due process of law.

### Ground Six

In Ground Six, Johnson alleges that the trial judge gave an improper jury charge on similar transaction evidence. The record shows that the trial judge instructed the jury about the use of similar transaction evidence at the time the evidence was offered and in the final charge. Transcript 197-98, 381. Both times, the court instructed the jury that such evidence was to be considered for the limited purpose of showing the defendant's state of mind, knowledge, or intent with regard to the charges before the jury. In the original charge, the court further instructed the jury that it "must first determine whether the accused . . . committed the other offense or transaction, and if so, whether the act was similar enough to the crime charged in the indictment so that the proof of the other offense or transaction in light of the limited purpose for which it has been presented to you tends to prove the crime charged in the indictment." Transcript 198. Nothing in this charge or the manner in which is was given was contrary to any clearly established federal law.

## CONCLUSION

For the above reasons, IT IS RECOMMENDED that the instant petition seeking relief under the provisions of 28 U.S.C. § 2254 be DENIED. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this recommendation with the district judge to whom this case is assigned, within fourteen (14) days after being served with a copy thereof.

**SO RECOMMENDED**, this 11th day of January, 2011.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge
